**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 0 2 2015
Madsen, CJ
CHIEF JUSTICE

This opinion was filed for record
at 8:00 Am on April 2, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANTHONY J. PREDISIK and CHRISTOPHER KATKE, | ) ) ) | No. 90129-5 |
| Petitioners, | ) ) | |
| | ) | En Banc |
| v. | ) ) | |
| SPOKANE SCHOOL DISTRICT NO. 81, | ) ) ) | |
| | ) | Filed APR 0 2 2015 |
| Respondent. | ) ) | |

YU, J.—This case involves two public school employees who are on paid administrative leave while their employer investigates allegations of misconduct. We must decide if public records that reveal these investigations are occurring— but do not describe the allegations being investigated—implicate the employees' privacy rights under the Public Records Act (PRA), chapter 42.56 RCW. We hold they do not. Because no exemption applies to withhold the records from public inspection, we reverse and remand with instructions to order the records at issue disclosed in their entirety without redaction.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FACTS AND PROCEDURAL HISTORY

Anthony J. Predisik and Christopher Katke are longtime employees of the Spokane School District No. 81 (District). In late 2011 and early 2012, the District began to investigate Predisik and Katke after individuals made separate, unrelated allegations against the two employees. The substance behind those allegations is not in the record, but the District's investigations are apparently ongoing and entering their fourth year. The District placed Predisik and Katke on administrative leave and has paid salaries to both employees while it investigates.

In the spring of 2012, two media outlets submitted public records requests to the District. One request sought the "administrative leave letter given to Anthony Predisik, a Shadle Park High School counselor." Clerk's Papers at 50. The other request asked for "information on all district employees currently on paid/non-paid administrative leave." *Id.* at 331. The requests returned three public records relevant to this dispute.

The first record is Predisik's "administrative leave letter," a short letter informing Predisik that he has been placed on administrative leave "pending completion of the District's investigation into allegations of inappropriate interactions with a former student." Ex. P-1. It also tells Predisik he is banned from district property and from talking with students about the matter during the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Predisik v. Spokane Sch. Dist. No. 81*, No. 90129-5

investigation. The letter does not describe the allegations in any further detail and does not name Predisik's accuser.

The second and third records are spreadsheets that document the amount of leave pay Predisik and Katke had accumulated through April 2012. Exs. P-2, P-3. The spreadsheets, one for each employee, contain columns for the employee's name, the date of pay, the hours paid, the rate of pay, and a position code. *Id.* The final column indicates the reason for leave, which is described generically for both Predisik and Katke as "[a]llegations currently under investigation." *Id.* Similar to the leave letter, the spreadsheets provide no further detail about the allegations or the accusers.

Predisik and Katke separately sued the District to enjoin disclosure of the leave letter and spreadsheets, alleging each record is exempt under the "[p]ersonal information" and "investigative" record exemptions of RCW 42.56.230(3) and 42.56.240(1). The District opposed the injunction and argued the leave letter and spreadsheets should be disclosed.[1] The trial court consolidated the two cases, and the parties filed cross motions for summary judgment. Citing our opinion in *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 189 P.3d 139 (2008), the trial court found that Predisik's and Katke's identities, but not the

---

[1] The two media entities that requested the records elected not to join this action, but the District adequately represents the public's interest in full disclosure.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

records themselves, were exempt from disclosure under RCW 42.56.230(3). The judge ordered all three records disclosed with Predisik's and Katke's names redacted. The Court of Appeals affirmed. *Predisik v. Spokane Sch. Dist. No. 81*, 179 Wn. App. 513, 319 P.3d 801 (2014).

We granted review to clarify when the PRA will recognize a right to privacy in the identity of a public employee who is the subject of an open investigation by his or her public employer. *Predisik v. Spokane Sch. Dist. No. 81*, 180 Wn.2d 1021, 328 P.3d 903 (2014).

ANALYSIS

The PRA requires that agencies "shall make available for public inspection and copying all public records," subject only to a handful of statutory exemptions. RCW 42.56.070(1); *see also Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 260, 884 P.2d 592 (1994) (*PAWS* II). The PRA ensures the sovereignty of the people and the accountability of the governmental agencies that serve them by providing full access to information concerning the conduct of government. *PAWS II*, 125 Wn.2d at 251. To effectuate that policy, we start with the presumption that all public records are subject to disclosure. Agencies can withhold a record only if it falls within one of the PRA's specific, limited exemptions. RCW 42.56.070(1). These exemptions are narrow, and we apply them in favor of partial disclosure where possible since "the PRA's purpose of

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

open government remains paramount." *Resident Action Council v. Seattle Hous. Auth.*, 177 Wn.2d 417, 432, 327 P.3d 600 (2013); *see also* RCW 42.56.070(1) (requiring that agencies redact records only "[t]o the extent required to prevent an unreasonable invasion of personal privacy interests protected by [the PRA]" and produce the remainder of the record). Similarly, the PRA reminds us "that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others." RCW 42.56.550(3).

Predisik and Katke argue that two of the PRA's exemptions independently justify withholding the leave letter and spreadsheets from disclosure. First, the employees assert the records contain personal information, the disclosure of which would violate their rights to privacy. RCW 42.56.230(3). Second, they argue the records constitute investigative records that are essential to law enforcement. RCW 42.56.240(1). We apply each exemption in turn.

A. Personal information exemption

Predisik and Katke rely principally on RCW 42.56.230(3), which exempts from disclosure "[p]ersonal information in files maintained for employees . . . of any public agency to the extent that disclosure would violate their right to privacy." Application of this exemption involves three separate questions: (1) whether the records contain personal information, (2) whether the employees have

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

a privacy interest in that personal information, and (3) whether disclosure of that personal information would violate their right to privacy. *Bellevue John Does*, 164 Wn.2d at 210. The first question is not in dispute. The leave letter and spreadsheets, which identify Predisik and Katke by name, contain "'personal information' [i.e., the employees' identities] because they relate to particular people." *Id.* at 211.

The existence of "personal information" in a public record is necessary to the exemption, but it is not sufficient alone to withhold the record. Employees must also demonstrate that they have a right to privacy in personal information contained in a record *and if such a right exists*, that disclosure would violate it. The personal information at issue here is Predisik's and Katke's identities when they are contained in public records disclosing that the District is investigating allegations of misconduct. So we next must decide whether the PRA grants public employees under investigation a right to privacy in their identities.

The statute's text offers little guidance to answer this question. Although the PRA expressly provides "the test for determining when the right to privacy is *violated*[, it] does not explicitly identify when the right to privacy *exists*." *Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 412-13, 259 P.3d 190 (2011) (footnote omitted) (citing *Bellevue John Does*, 164 Wn.2d at 212). We previously used principles of tort law to fill this definitional void and define

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the contours of the PRA's privacy right. In *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 135, 580 P.2d 246 (1978), we concluded that the "right of privacy," as it is used in the PRA, means "what it meant at common law," and we adopted the definition in the *Restatement (Second) of Torts* § 652D (1977) (§ 652D).

Therefore, a person has a right to privacy under the PRA only in "'matter[s] concerning the private life.'" *Id*. at 135 (quoting § 652D). To explain how that standard is applied in practice, we looked to the *Restatement*'s summary of the right to privacy:

> "Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget."

*Id*. at 136 (quoting § 652D cmt. b, at 386). This comment "illustrates *what nature of facts* are protected by this right to privacy," *id*. (emphasis added), and taken in context makes clear that the PRA will not protect everything that an individual would prefer to keep private. The PRA's "right to privacy" is narrower. Individuals have a privacy right under the PRA only in the types of "private" facts fairly comparable to those shown in the *Restatement*.

Using the *Restatement* as a rubric, we conclude that the PRA does not recognize a right of privacy in the mere fact that a public employer is investigating

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

an employee. In so holding, we distinguish the investigation itself from the employee's conduct giving rise to that investigation. This difference, though subtle, is very important to the *Restatement*'s privacy interest analysis. A public employer's investigation is certainly not a *private* matter: it arises exclusively from the employee's *public* employment. The investigation is simply an administrative process. It is not akin to a "'family quarrel[]'" or a "'humiliating illness[,]'" nor does it touch on the employee's "'life [at] home.'" *Id.* (quoting § 652D cmt. b, at 386). To the contrary, the investigation relates to a part of the employee's life—his or her profession—that is freely exposed to the public. A public employer's investigation is an act of the government, not a closely held private matter that gives rise to a privacy right under the PRA.

We again contrast the employer's investigation, in which there is no privacy interest, with the allegations the employer is investigating. We acknowledge that such allegations may encompass some "past history that [the employee] would rather forget" and could come within that example or others in the *Restatement* that would implicate a privacy right under the PRA. But the mere fact there is an open investigation into allegations of misconduct is not, by itself, a reason to withhold a record from disclosure. Agencies and courts must review each responsive record and discern from its four corners whether the record discloses factual allegations that are truly of a private nature, using the *Restatement* as a guide. Though there is

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

an inherent degree of fact-finding in this analysis, a record-specific inquiry is the only way to adhere to the PRA's mandate that exemptions be construed narrowly. RCW 42.56.030.

Applying this rule, we conclude that neither the leave letter nor the spreadsheets implicate a privacy right under the PRA. Those records disclose only that the District has opened an investigation and placed Predisik and Katke on leave during its pendency; the records do not disclose the factual allegations underlying that investigation. From these three records, the public learns only matters related to Predisik's and Katke's status as public employees and nothing about their personal lives. For the reasons we explain above, this information does not trigger a privacy interest under the PRA.

Predisik and Katke argue our decision in *Bellevue John Does* requires we find a privacy interest here. We held in that case that teachers have a right to privacy in their identities in records related to unsubstantiated allegations, since in those instances "the fact of the allegation . . . does not bear on the teacher's performance or activities as a public servant." 164 Wn.2d at 215. But as we explained, the existence of a privacy right under the PRA depends on the types of facts disclosed and is not amenable to a bright-line rule.

We do not find *Bellevue John Does* dispositive when applied to the records in this case and the limited, public nature of the facts those records disclose.

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Again, a public employer's investigation is a governmental act and a consequence of employment with the government. Unlike the records at issue in *Bellevue John Does*, the leave letter and spreadsheets do not disclose any salacious facts that one might consider a private matter. Indeed, the records contain no specific allegations of misconduct at all. It makes no difference if the allegations here are eventually substantiated because the records do not describe them.

We do not read *Bellevue John Does* to create a sweeping rule that exempts an employee's identity from disclosure any time it is mentioned in a record with some tangential relation to misconduct allegations. A rule that broad would justify withholding, or at least redacting, nearly every record created during the course of the District's investigation. Even *Bellevue John Does* recognizes the PRA entitles the public to "documents concerning the nature of the allegations and reports related to the investigation and its outcome." *Id.* at 221.

Because we hold that no right of privacy exists in the leave letter or spreadsheets, we need not decide if disclosure of those records would violate that right. *See* RCW 42.56.050 (providing the test for determining when disclosure violates the right to privacy if such a right exists). We observe, however, that the public has a legitimate concern in the identities of public employees who are the subject of investigations. The PRA is meant to engender the people's trust in their government. The recent unrest in Ferguson, Missouri, is an extreme example of

10

how that trust is eroded when the public suspects the government is withholding information to protect its own. *See, e.g.,* Tanzina Vega, Timothy Williams & Erik Eckholm, *Emotions Flare in Missouri Amid Police Statements*, N.Y. TIMES (Aug. 15, 2014), *available at* www.nytimes.com/2014/08/16/us/darren-wilson-identified-as-officer-in-fatal-shooting-in-ferguson-missouri.html.

But secrecy can breed suspicion in more subtle ways, too. For example, if we accepted Predisik's and Katke's position, the public would never learn about an investigation unless and until the underlying allegations are substantiated at some point in the future. There would be no opportunity for the public to discover the District's ongoing three-year investigation, much less question the effectiveness of what some might consider an awfully long process. Government cannot be held accountable for actions it shields from the public's eye.

Public employees are paid with public tax dollars and, by definition, are servants of and accountable to the public. The people have a right to know who their public employees are and when those employees are not performing their duties. In sum, we hold there is no privacy right under the PRA in the mere fact that a public employer is investigating a public employee or in the employee's use of administrative leave. Both are simply functions of the government. Without such a privacy right, RCW 42.56.230(3) does not apply to exempt the leave letter or spreadsheets from disclosure.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Predisik v. Spokane Sch. Dist. No. 81*, No. 90129-5

B. Investigative record exemption

Predisik and Katke also argue that the investigative records exemption requires that the District withhold the three records. RCW 42.56.240(1). A record falling within this exemption must, among other requisites, "be essential to law enforcement or essential to the protection of privacy." *Koenig v. Thurston County*, 175 Wn.2d 837, 843, 287 P.3d 523 (2012) (citing *Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 728, 748 P.2d 597 (1988)). The three records here are neither.

The leave letter and spreadsheets are not essential to law enforcement. Our decision in *Brouillet v. Cowles Publishing Co.*, 114 Wn.2d 788, 795, 791 P.2d 526 (1990), is dispositive. There we considered whether the superintendent of public instruction (SPI), who actually wields disciplinary authority over teaching credentials, performed law enforcement functions. We concluded the SPI could not rely on the investigative records exemption to withhold records because "it does not enforce law," and we rejected the agency's "attempt to characterize its supervision of its employees as law enforcement" activity under the exemption. *Id.* at 795-96. The District has even less investigative and disciplinary authority than the SPI, and its records similarly are not exempted under RCW 42.56.240(1).

Nor are the leave letter and spreadsheets essential to the protection of privacy. The PRA is consistent in its definition of "privacy," which is the same

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

definition we announced in *Hearst Corp.* and applied above. RCW 42.56.050; LAWS OF 1987, ch. 403, § 1. As discussed in detail earlier, Predisik and Katke have no right to privacy in records disclosing only the fact that they are the subjects of an open investigation.

CONCLUSION

Public employees have no privacy right in the fact that they are being investigated by their public employer. The investigation is merely a status of their public employment, not an intimate detail of their personal lives, and without such a privacy right, RCW 42.56.230(3) and .240(1) are inapplicable. We reverse the Court of Appeals and remand with instructions to order the records at issue disclosed in their entirety without redaction.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Predisik v. Spokane Sch. Dist. No. 81*, No. 90129-5

_[signature]_ Yu, J.

WE CONCUR:

_[signature]_ Madsen, C.J.

_[signature]_ Johnson, J.

_[signature]_ Stephens, J.

_[signature]_ González, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 90129-5

FAIRHURST, J. (dissenting)—I dissent because Anthony J. Predisik and

Christopher Katke (Employees) have a right to privacy in their identities. The

Employees' right to privacy is violated if the records at issue are disclosed. However,

such records can be redacted to protect the Employees' privacy interest. To reach a

contrary result, the majority deviates from our precedent and creates a new rule.

ANALYSIS

The primary issue in this case is whether under the Public Records Act (PRA),

chapter 42.56 RCW, the identities of the Employees are exempt from disclosure.

The majority's holding that the Employees' identities are not exempt from disclosure

is contrary to our case law. The question presented is resolved by our settled

jurisprudence.

We have construed the PRA as "a strongly worded mandate for broad

disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d

246 (1978). The PRA protects the public's right to be informed of agency decisions.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

RCW 42.56.030. To fully protect the public's interest, the PRA requires that its provisions be construed liberally and its exemptions be construed narrowly. *Id.* Unless a record falls within a specific PRA exemption or other statutory exemption, the PRA requires state and local agencies to disclose all public records upon request. RCW 42.56.070(1). If a portion of a record should be redacted or remain undisclosed, "an agency shall delete identifying details in a manner consistent with [the PRA] when it makes available or publishes any public record." *Id.* The agency must justify each redaction in writing. *Id.*

The Employees argue that two of the PRA's exemptions justify withholding the records in this case: (1) the personal information exemption, RCW 42.56.230(3), and (2) the investigative records exemption, RCW 42.56.240(1). We disagree with the majority's holding regarding the personal information exemption but agree with the majority's analysis and decision regarding the investigative records exemption.

*The Personal Information Exemption*

The PRA exempts from disclosure "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy." RCW 42.56.230(3). To determine if records constitute personal information exempt from disclosure, we use a three-part inquiry: (1) whether the allegations constitute personal information, (2) whether those claiming that the exemption applies have a right to privacy in their identities,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

and (3) whether disclosure of the personal information would violate their right to privacy. *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 209, 189 P.3d 139 (2008).

It is undisputed that the leave letter and the spreadsheets that identify the Employees by name constitute personal information. *See id.* at 211 ("The teachers' identities are 'clearly personal information' because they relate to particular people."); majority at 6. However, personal information is exempt from disclosure only to the extent that disclosure would violate the individual's right to privacy. *Bellevue John Does*, 164 Wn.2d at 212.

The right to privacy is intended to have the same meaning as it was given by this court in *Hearst*. *Id. Hearst*, 90 Wn.2d at 135-36, defined the "right to privacy" by looking to the common law tort of invasion of privacy and adopted the definition of "invasion of privacy" set forth in the *Restatement (Second) of Torts* § 652D (1977). According to the *Restatement*, "'[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of legitimate concern to the public.'" *Hearst*, 90 Wn.2d at 135-36 (quoting RESTATEMENT § 652D).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

A.      *The Employees Have a Right to Privacy in Their Identities*

While the above definition describes when the right to privacy is violated, it does not define when the right to privacy exists. *See Bainbridge Island Police Guild v. City of Puyallup*, 172 Wn.2d 398, 412-13, 259 P.3d 190 (2011). We have stated that the right to privacy exists "'in matter[s] concerning the private life.'"[1] *Bellevue John Does*, 164 Wn.2d at 212 (alteration in original) (internal quotation marks omitted) (quoting *Hearst*, 90 Wn.2d at 135). We have also noted that there is a right to privacy in unsubstantiated allegations. *Morgan v. City of Federal Way*, 166 Wn.2d 747, 756, 213 P.3d 596 (2009) ("Unsubstantiated allegations are exempt from disclosure.").

In *Bellevue John Does* we found that if "a complaint regarding misconduct during the course of public employment is substantiated or results in some sort of discipline, an employee does not have a right to privacy in the complaint." 164 Wn.2d at 215. However, "[a]n unsubstantiated or false accusation of sexual misconduct is not an action taken by an employee in the course of performing public duties." *Id.* In *Bellevue John Does*, public school teachers sought to enjoin their respective school districts from releasing their names in response to a public records request. *Id.* at 205. The request was for all records relating to allegations of sexual

_____

[1]The *Restatement* summarizes the right to privacy in comment b to § 652D, and this comment is cited on page 7 of the majority opinion.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

misconduct by teachers in the prior 10 years. *Id.* at 206. We held that the teachers had a right to privacy in their identities and ordered that the records could be disclosed only if the teachers' names were redacted. *Id.* at 215, 227. We noted that the unsubstantiated allegations of sexual misconduct that never resulted in any form of discipline were matters concerning the teachers' private lives and were not specific instances of misconduct committed while in the course of employment. *Id.* at 215. In our reasoning we noted that "[t]he fact of the allegation, not the underlying conduct, does not bear on the teacher's performance or activities as a public servant." *Id.* Moreover, we stated that "[t]he mere fact of the allegation of sexual misconduct toward a minor may hold the teacher up to hatred and ridicule in the community, without any evidence that such misconduct ever occurred." *Id.*

In *Morgan*, a post-*Bellevue John Does* decision, we held that the personal information exemption did not apply to the records at issue. *Morgan*, 166 Wn.2d at 276. In *Morgan*, the judge argued that a report produced by the investigating attorney was exempt from disclosure because it contained unsubstantiated allegations that were highly offensive. *Id.* The report alleged that the judge created a hostile work environment by, among other things, angry outbursts and inappropriate gender-based comments. *Id.* In our reasoning, we first addressed whether the judge's right to privacy would be violated if the records were disclosed. We found that the allegations against the judge were not as offensive as allegations of sexual

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

misconduct with a minor, like in *Bellevue John Does*, and would not be highly offensive if disclosed. Next, we stated that contrary to the judge's assertions, the allegations were not unsubstantiated. *Id.* The records at issue in *Morgan* evaluated the credibility of each person who made an allegation and found that the allegations were likely true. *Id.* We held that the judge did not have a right to privacy in the responsive records. *Id.*

Here, the question is whether the Employees, who are the subject of unsubstantiated allegations of misconduct, have a right to privacy in their identities. The administrative leave letter informed that Predisik was placed on administrative leave "pending completion of the District's investigation into allegations of inappropriate interactions with a former student." Ex. P-1. The leave slips indicate that the Employees are on leave for "[a]llegations currently under investigation." Exs. P-2, P-3. The documents provided no further information about the allegations or the accusers. Like *Bellevue John Does* and unlike *Morgan*, the allegations in the records are unsubstantiated and there is no evidence that the accusations resulted in any form of discipline. Because the allegations were unsubstantiated, they do not bear on the teachers' performance as public servants and do not inform the public of specific instances of misconduct during the course of employment. Therefore, the Employees have a right to privacy in their identities.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Predisik v. Spokane Sch. Dist. No. 81*, No. 90129-5
Fairhurst, J. (dissenting)

The majority found that because the records did not disclose "salacious facts," the records here are not comparable to those examined in *Bellevue John Does*. Majority at 10. The majority set forth a new rule that requires "[a]gencies and courts [to] review each responsive record and discern from its four corners whether the record discloses factual allegations that are truly of a private nature." *Id.* at 8. Applying this rule, the majority found that the records do not disclose private information about the employees because the records related only to the Employees' status as public employees. *Id.* at 9. The majority distinguished the "investigation itself from the employee's conduct giving rise to that investigation." *Id.* at 8. According to the majority, the fact that the investigation is occurring is not a private matter because it relates to a part of the Employees' lives that are freely exposed to the public. *Id.*

In reaching its conclusion, the majority disregards the fact that in *Bellevue John Does* we found that unsubstantiated allegations of misconduct are not actions taken by public employees during the course of performing public duties.[2] 164 Wn.2d at 215. Therefore, a public employee's identity when disclosed in connection with unsubstantiated allegations or evidence of pending investigations is not related

---

[2]To support its reasoning, the majority seems to rely on principles from the dissent in *Bellevue John Does*. 164 Wn.2d at 234 (Madsen, J., dissenting) (noting that the teachers did not have a right to privacy because the allegations of specific instances of misconduct occurred while the employees were performing their public duties).

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to his or her status as a public employee. This principle was derived from past precedent such as *Cowles Publishing Co. v. State Patrol*, 109 Wn.2d 712, 725, 748 P.2d 597 (1988). In *Cowles*, we noted that the right to privacy is not violated when a complaint about a specific instance of misconduct is substantiated, but where an investigation is pending, disclosure would result in a more intrusive invasion of privacy. The principle was reiterated in *Morgan*, where we noted that unsubstantiated claims of misconduct are exempt from disclosure. 166 Wn.2d at 756.

B.  *Disclosure of the Employees' Identities Would Violate Their Right to Privacy*

Finding that the Employees have a right to privacy in their identities in connection with unsubstantiated claims of misconduct is not the end of the analysis. We next must consider whether the Employees' right to privacy would be violated by disclosure. "A person's 'right to privacy' . . . is invaded or violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050.

1.  *Highly Offensive*

While our cases do not define the term "highly offensive," we have addressed whether the disclosure of certain records would be highly offensive in several cases. In these cases we have noted that embarrassment alone is not sufficient for a record to be considered highly offensive. *Dawson v. Daly*, 120 Wn.2d 782, 797, 845 P.2d

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

995 (1993). In *Bellevue John Does* we found that disclosing the identities of teachers accused of sexual misconduct is highly offensive. 164 Wn.2d at 216. Outside the context of sexual misconduct allegations, we have held that disclosure of records that discuss employee performance but that do not discuss specific instances of misconduct, are presumed highly offensive. *Dawson*, 120 Wn.2d at 797. However, as noted above, in *Morgan* we found that specific, substantiated allegations of inappropriate behavior and outbursts were not as offensive as allegations of sexual misconduct. 166 Wn.2d at 756.

Here, the allegations were of inappropriate behavior with a former student. The spreadsheets also disclosed that both Employees were under investigation for allegations of misconduct. The records, like those in *Dawson*, did not state specific instances of misconduct but instead disclosed vague allegations. Unlike the allegations in *Morgan*, the records here did not include facts or credibility findings to substantiate the allegation of inappropriate behavior. As the Court of Appeals noted, unsubstantiated allegations of misconduct, other than sexual misconduct, can subject teachers to the same gossip and ridicule without actual evidence of wrongdoing. *Predisik v. Spokane Sch. Dist. No. 81*, 179 Wn. App. 513, 520, 319 P.3d 801 (2014) (citing *Bellevue John Does*, 164 Wn.2d at 220-21). Although the allegations against the Employees were not sexual misconduct with a minor, the disclosure of one's identity associated with vague allegations and evidence of

9

pending investigations related to one's profession would be highly offensive to a reasonable person.

## 2.    *Legitimate Public Concern*

Since disclosure would be highly offensive, we must consider if there is a legitimate public concern in the identities of the Employees such that the records must be disclosed. The application of this exemption turns on whether the concern of the public is legitimate. *Dawson*, 120 Wn.2d at 798. The term "legitimate" in the context of the PRA means "'reasonable.'" *Id.* If an allegation is unsubstantiated, the matter is not of public concern. *Bellevue John Does*, 164 Wn.2d at 221. Here, the public does not have a legitimate interest in the names of teachers who are under investigation for unsubstantiated allegations.

While there is not a legitimate public concern in the names of the teachers, the public does have a legitimate concern in the leave slip and the spreadsheet. As the Court of Appeals noted, the public has an interest in seeing that a government agency conducts itself fairly and uses funds responsibly. *Predisik*, 179 Wn. App. at 520.

In *Bellevue John Does*, we found that the teachers' names could be redacted to protect their privacy interests and such redaction would not harm the public oversight of agency conduct. 164 Wn.2d at 221-23 (noting that the identities of those accused of unsubstantiated allegations of misconduct does not aid in effective government oversight by the public). Furthermore, as the Court of Appeals noted,

*Predisik v. Spokane Sch. Dist. No. 81,* No. 90129-5
Fairhurst, J. (dissenting)

the leave slip and spreadsheets are not highly offensive when the identifying information is redacted. *Predisik,* 179 Wn. App. at 520. Therefore the records should be disclosed but with the identities of the teachers redacted.

The majority notes that there is a legitimate public interest in the identities of the Employees. Majority at 10. According to the majority, if we redact or withhold the records, the public would never find out about the investigation until the allegations were substantiated, and the public has a right to know about employees who are not performing their duties. Majority at 11. We generally agree. However, we can uphold both the privacy interest of the Employees and the public's interest in overseeing government actions by redacting the records. There is no evidence that the Employees were not performing their duties. *See Bellevue John Does,* 164 Wn.2d at 217 ("'[T]he public as a rule has no legitimate interest in finding out the names of people who have been falsely accused.'" (quoting *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405,* 129 Wn. App. 132, 155-57, 120 P.3d 616 (2005))). By redacting and releasing the documents, the public could learn of the ongoing investigation and question its effectiveness without violating the privacy of the Employees. *See* majority at 11.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

3.      *Redaction is Sufficient to Protect the Employees' Privacy Interest*

According to the Employees, the records in their entirety are exempt under the personal information exemption, RCW 42.56.230(3). The Employees contend that redaction is not sufficient to protect their privacy interest in their identities because the public records request specifically asked for records related to Predisik, and therefore the disclosure of records in response to that request necessarily links his identity to the material.

We have rejected similar arguments. *See Koenig v. City of Des Moines*, 158 Wn.2d 173, 183-84, 142 P.3d 162 (2006). In *Koenig* we held that there is no statutory language or case law to support the argument that we should look beyond the record at issue to determine whether it is exempt from disclosure. *Id.* at 183. In *Koenig* we created a rule that agencies apply exemptions based only on the information the record discloses on its face without regard for the request. This rule creates a uniform disclosure system because it ensures that disclosure will not depend on how the request is made, but on the individual record at issue. *Id.*

CONCLUSION

I would affirm the Court of Appeals. The Employees who are the subjects of unsubstantiated allegations and pending investigations have a right to privacy in their identities. This right is violated if the records at issue are disclosed in their entirety to the public. However, if the identities of the Employees are redacted from

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the records, the Employees will not have a right to privacy in the records. Therefore, the records should be redacted and released. Because the majority finds that the Employees do not have a right to privacy in their identities and holds that the records at issue be disclosed in their entirety, I respectfully dissent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Fairhurst, J.

Owens, J.

Gordon McCloud, J.

Wiggins, J.